# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PAZ, | Case No. 1:12-cv-02051-SAB |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 13, 14) |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Leticia Paz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security Income benefits and disability insurance benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a history of gastric bypass surgery with iron deficiency; bilateral carpal tunnel syndrome and cubital tunnel syndrome with history of surgeries; hepatitis C; lumbar

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 9.)

1

degenerative disc disease; polysubstance abuse in sustained remission; mood disorder; and anxiety disorder. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on October 23, 2008. (AR 241.) Plaintiff's applications were initially denied on July 2, 2009, and denied upon reconsideration on April 7, 2010. (AR 145-49; 154-59.) Plaintiff requested and received a hearing before Administrative Law Judge Judson Scott ("the ALJ"). Plaintiff appeared for a video hearing on June 28, 2011. (AR 44-99.) On July 27, 2011, the ALJ found that Plaintiff was not disabled. (AR 16-29.) The Appeals Council denied Plaintiff's request for review on October 18, 2012. (AR 1-3.)

### A. Hearing Testimony

Plaintiff appeared at the hearing with counsel on June 28, 2011. (AR 44-99.) The ALJ also heard testimony from a medical expert, Dr. Eric Puestow, regarding Plaintiff's physical condition; a medical expert, Dr. Shakil Mohammed, regarding Plaintiff's mental conditions; and a vocational expert ("VE"), Lawrence Hughes.

### B. ALJ Findings

The ALJ found that Plaintiff had the following severe impairments: history of gastric bypass surgery with iron deficiency; bilateral carpal tunnel syndrome and cubital tunnel syndrome with history of surgeries; hepatitis C; lumbar degenerative disc disease; polysubstance abuse in sustained remission; mood disorder; and anxiety disorder. (AR 21.) Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the listed impairments. (AR 23.)

As relevant here, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following limitations: no bilateral pushing/pulling; perform repetitive manipulative and reaching activities with bilateral arms/hands no more than occasionally; no

exposure to heavy industrial vibration; no industrial hazards; perform no more than simple repetitive tasks involving 1-3 steps; interact with co-workers, supervisor or public no more than frequently; and perform no more than low stress work involving few changes in work or its setting and requiring few decisions. (AR 24.) Plaintiff is unable to perform her past work, but considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are a significant number of jobs in the national economy that Plaintiff can perform. (AR 27-28.)

## III.

## LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

///

# IV.

# ANALYSIS

Plaintiff raises three issues in this action: 1) whether the ALJ accommodated all of the limitations opined by Dr. Montgomery into the residual functional capacity assessment or gave legally sufficient reasons for failing to do so; 2) whether the ALJ erred by relying on the vocational expert testimony which Plaintiff claims deviates from the Dictionary of Occupational Titles ("DOT"); and 3) whether these errors were harmful and warrant remand. (Pl.'s Opening Brief 5-6, ECF No. 13.)

### A. ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ erred by failing to accommodate all of the limitations stated by Plaintiff's treating physician, Dr. Mark Montgomery, regarding her hand limitations. (ECF No. 13 at 6-8.) Defendant responds that the ALJ properly considered all evidence regarding Plaintiff's hand limitations and the residual functional capacity is not inconsistent with Dr. Montgomery's stated limitations. (ECF No. 14 at 5-7.)

The ALJ found that Plaintiff's allegations regarding her limitations are not credible. While Plaintiff contended that she was unable to lift anything more than a cup of coffee without pain, the ALJ found that the record does not show any follow-up treatment for Plaintiff's hand complaints after 2007 and her complaints are not supported by the clinical findings. (AR 25.) The EMG study showed mild-moderate median delay across the right wrist and mild median delay across the left wrist. (Id.)

The ALJ considered that Dr. Montgomery found that Plaintiff had abnormal findings regarding left elbow flexion, left Tinel's sign, left Phalen's test, right Phalen's test, diminished sensation in the middle fingers on the left and 30% diminished grip strength bilaterally, however the remainder of the examination was normal. (Id.) Dr. Montgomery noted that Plaintiff had intermittent slight pain in both wrists and hands and that heavy, repetitive or forceful use of the hands would cause moderate pain. (Id.) Dr. Montgomery opined that Plaintiff's work restrictions consisted of no heavy lifting, no repetitive or forceful gripping, twisting, pushing, pulling or manipulating with either hand and no using vibrating or pounding tools. (Id.) Dr. Montgomery

4

1 opined that Plaintiff is only precluded from using her hands for forceful or repetitive activities.
2 (Id. at 26.)

3 The ALJ considered treatment notes from 2006-2007 which consistently noted that
4 Plaintiff had normal muscle strength and tone without muscle wasting or edema in the
5 extremities. (Id. at 25.) In March of 2008, Dr. Tran examined Plaintiff and found positive
6 Tinel's sign and loss of finger sensation on the left. (Id.) Dr. Dozier opined that Plaintiff would
7 be able to perform light work with occasional postural, manipulative, and reaching limitations.
8 (Id.)

9 The ALJ gave significant weight to the opinion of Dr. Dozier who had the opportunity to
10 examine Plaintiff and controlling weight to the opinion of Dr. Montgomery who was Plaintiff's
11 treating physician. (Id. at 27.) While Plaintiff's attorney argued that Plaintiff was disabled due to
12 the severity of her upper extremity limitations, the ALJ found that such a finding would be based
13 entirely on Plaintiff's subjective symptoms and her ability for fine and gross manipulating is not
14 precluded. (Id.)

15     1. <u>Medical Records</u>

16 On June 14, 2007, Dr. Montgomery stated that Plaintiff had intermittent slight pain in her
17 hands and wrists which will increase to moderate pain with heavy, repetitive or forceful use of the
18 hands. (AR 290.) He limited her to no heavy lifting and no repetitive or forceful gripping,
19 twisting, pushing, pulling or manipulating with either hand. (Id.) In response to a request from
20 Plaintiff's employer regarding returning her to work, on November 30, 2005, Dr. Montgomery
21 stated that Plaintiff requires limitations of no keying greater than ten minutes per hour
22 intermittently, no lifting over two pounds, and no repetitive or forceful use of her hands. (AR
23 311.)

24 Reviewing Plaintiff's medical records following her discharge from Dr. Montgomery, the
25 only incidents of Plaintiff complaining of any symptoms related to carpal tunnel in her wrists or
26 hands is during her consultations related to her application for Social Security Benefits. On
27 March 1, 2008, Plaintiff was examined by Dr. Tran. (AR 357-61.) Dr. Tran found that Tinel's
28 test was mildly positive in the left wrist, negative on the right wrist, and negative in both elbows.

1  Phalen's test was negative bilaterally.  Motor strength was 5/5 bilaterally.  There was decreased
2  pinprick sensation in the left third finger.  (AR 360.)  Plaintiff was found to have mild positive
3  Tinsel test in her left wrist, her strength was intact, and she had minimal loss of sensation by
4  examination.  (Id.)  Dr. Tran found that Plaintiff had no fingering or grasping restrictions.
5  Plaintiff was limited to occasional left wrist movements.  (Id.)  Plaintiff had no restrictions to
6  right wrist movements.  (Id. at 361.)

7  During an examination on June 8, 2009, Dr. Dozier noted positive Tinel's and Phalen's
8  sign in both wrists.  (AR 437.)  Motor strength was 4/5 for grip strength and grip strength was 5/5
9  bilaterally.  Pinprick sensation was intact.  (AR 438.)  Dr. Dozier found that Plaintiff could lift
10 and carry 20 pounds occasionally and 10 pounds frequently.  Plaintiff was limited to occasional
11 reaching, handling, fingering and feeling.  (AR 439.)  Radiological examinations of Plaintiff's
12 hands were normal.  (AR 434, 440.)

13 Dr. Bobba completed a physical functional capacity report on July 1, 2009, and found that
14 Plaintiff was limited in reaching, handling, fingering, and feeling, but gross handling and fine
15 fingering could be done frequently with both hands.  (AR 443.)

16 Not until 2010 do Plaintiff's medical records show that she began complaining of arthritis
17 in her hands.  On January 14, 2010, Plaintiff complained of pain in her elbows, wrists and hands.
18 (AR 451.)  Plaintiff was referred to Dr. Hsu, a rheumatologist for evaluation of her symptoms.
19 (AR 648.)  On March 10, 2010, x-rays of Plaintiff's right and left hands showed periarticular
20 osteopenia which may be an early sign of rheumatoid arthritis, and x-rays of Plaintiff's left hand
21 also showed probable degenerative cyst at the base of the fifth metacarpal.  (AR 651, 652.)  On
22 March 16, 2010, Dr. Quint completed a physical functional capacity report.  (AR 486-90.)  Dr.
23 Quint found the same limitations as Dr. Bobba had the prior year.  (AR 488.)  On April 1, 6, and
24 26, 2010, Plaintiff complained of tenderness in her wrists.  (AR 638, 640, 641.)

25    2.   Discussion

26 The weight to be given to medical opinions depends upon whether the opinion is proffered
27 by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-
28 831 (9th Cir. 1995).  In general, a treating physician's opinion is entitled to greater weight than

6

that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the medical evidence is conflicting, it is for the ALJ to determine credibility and resolve the conflict. Thomas, 278 F.3d at 956-57. The opinion of the treating physician may be rejected in favor of the opinion of an examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Barnhart, 881 F.2d 747, 751 (9th Cir. 1989). Plaintiff contends that the ALJ failed to set forth reasons for not adopting the restriction that Plaintiff was precluded from any repetitive use of her hands. However, the Court disagrees for two reasons.

First, the ALJ can meet this burden by setting out a detailed thorough summary of the facts and conflicting evidence, stating his interpretation of the evidence, and making findings. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999). In this instance, the ALJ set forth the conflicting evidence and assigned weight to the opinions of Dr. Montgomery, Dr. Dozier, and Dr. Tran. (AR 27.) To the extent that those opinions conflicted, it is for the ALJ to resolve the conflict. Thomas, 278 F.3d at 956-57. Further, as an examining physician, Dr. Dozier's opinion can provide substantial evidence to support the ALJ's findings. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence.")

Second, the ALJ found that Plaintiff was able to perform repetitive manipulative and reaching activities with bilateral arms/hands no more than occasionally. In response to Plaintiff's employer's attempt to return her to work with accommodations, Dr. Montgomery stated on November 30, 2005, that Plaintiff requires limitations of no keying greater than ten minutes per hour intermittently, no lifting over two pounds, and no repetitive or forceful use of her hands.

1  While Plaintiff argues that Dr. Montgomery's limitation on repetitive motion precludes the
2  finding that she was able to occasionally perform repetitive motion, his statement that Plaintiff
3  was able to perform no keying greater than ten minutes per hour intermittently appears to conflict
4  with his opinion that she cannot perform any repetitive motion.  This conflict was for the ALJ to
5  resolve.

6  Viewing the record as a whole, substantial evidence supports the ALJ's determination that
7  Plaintiff was able to perform repetitive manipulative and reaching activities with bilateral
8  arms/hands no more than occasionally.  Further, Plaintiff has made no challenge to the adverse
9  credibility finding made by the ALJ that Plaintiff's hand limitations were not as severe as she
10 claimed.  The ALJ did not err in determining Plaintiff's residual functional capacity assessment.

11 **B.     ALJ Did Not Err in Relying on VE Testimony**

12 Plaintiff contends that the VE's testimony that Plaintiff would be able to perform the jobs
13 of accounting clerk, teacher's aide, and counter clerk is at odds with the DOT descriptions for
14 these jobs. (ECF No. 13 at 8-9.)  Plaintiff asserts that the jobs of teacher aide and appointment
15 clerk have a Specific Vocational Preparedness ("SVP") of three which is inconsistent with
16 Plaintiff's limitation to simple, repetitive tasks; and the job description for a counter clerk is
17 inconsistent with Plaintiff's limitations of simple repetitive tasks and low stress work.  Plaintiff
18 contends that the ALJ erred by failing to have the VE address these inconsistencies.  (Id. at 11-
19 12.)

20 Defendant argues that the ALJ did not merely limit Plaintiff to simple repetitive tasks, but
21 to simple repetitive tasks involving 1 to 3 steps which is a higher level of functioning.  (ECF No.
22 14 at 7-9.)  Further, the job descriptions in the DOT represent the maximum activities required for
23 a range of jobs and the VE described the jobs as a subgroup and eroded the number of jobs
24 available based upon Plaintiff's limitations.  (Id. at 10.)

25 In his opinion, the ALJ noted that while Plaintiff alleged that she had severe depression,
26 the record does not contain any mental health treatment notes. (AR 22.)  Based on the finding of
27 Dr. Zhang, the ALJ found that Plaintiff's mental health impairments are severe. (AR 22.)  The
28 ALJ found that Plaintiff's residual functional capacity required her to perform no more than

simple repetitive tasks involving 1 to 3 steps; interact with co-workers, supervisor and the public no more than frequently; and perform no more than low stress work involving few changes in work or its setting and requiring few decisions. (AR 24.)

Plaintiff was examined by Dr. Zhang on two occasions. On February 22, 2008, Dr. Zhang found that Plaintiff suffered from depressive and anxiety symptoms. (AR 356.) Dr. Zhang opined that Plaintiff had a moderate level of difficulty in sustaining adequate concentration, persistence and pace in common work and social settings and her capacity to understand, remember and carry out simple instructions was intact. (Id.) Plaintiff saw Dr. Zhang again on February 25, 2009. (AR 393-95.) The findings were similar to 2008, except that Plaintiff's capacity to interact appropriately with the public, supervisors, and co-workers was reasonable. (AR 395.)

At step five, if the claimant is unable to perform past work, the Commissioner must decide if the claimant is able to do any other work. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). At this point, the burden shifts to the Commissioner to show that, taking into consideration the claimant's residual functional capacity, age, education and work experience, the claimant can perform some other work that exists in significant numbers in the national economy. Tackett, 180 F.3d at 1100. To determine this issue, the Commissioner relies on the DOT for information about the requirements for jobs in the national economy; and the testimony from a VE to obtain occupational evidence. Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). Where a conflict exists between the DOT and the VE's testimony, the ALJ must determine whether the VE's explanation for the conflict is reasonable and whether any basis exists for relying on the VE rather than the DOT. Massachi, 486 F.3d at 1153.

Here, the ALJ considered the testimony of the VE who opined that a person of Plaintiff's residual functional capacity, age, education, and work experience would be able to perform work that is available in significant numbers in the national economy, such as an appointment clerk, teacher's aide, or counter clerk. (AR 28-29.) The hypothetical presented to the VE was consistent with the ALJ's disability findings. The VE testified that the jobs of appointment clerk and teacher's aide have a SVP of 3; and the job of counter clerk has an SVP of 2. (AR 83-84.)

However, Plaintiff contends that the ALJ erred in failing to question the VE as to whether his findings conflict with the DOT.

The reasoning level gauges the minimal ability a worker needs to complete the tasks of the job. Pak v. Astrue, No. 5:08-cv-00714-OP, 2009 WL 2151361, at *7 (C.D. Cal. July 14, 2009). The weight of authority in this circuit finds that a person limited to simple repetitive tasks is precluded from performing work that requires level 3 reasoning. See Torrez v. Astrue, No. 1:09-cv-00626-JLT, 2010 WL 2555847, at *8 (E.D. Cal. June 21, 2010) (finding DOT precludes claimant limited to simple repetitive tasks from performing jobs that requiring Level 3 reasoning based upon weight of authority in this circuit); Pak, 2009 WL 2151361, at *7 (reasoning level 3 conflicts with prescribed limitation that claimant can perform simple, routine tasks); Tudino v. Barnhart, 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) ("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks."); Espinoza v. Astrue, No. 5:12-cv-00544-OP, 2013 WL 327889, at *3 (C.D. Cal. Jan. 29, 2013) (recognizing that the Ninth Circuit has not addressed the issue directly, but "the weight of authority in this Circuit holds that a limitation to simple, repetitive or routine tasks is incompatible with a reasoning level of 3").

However, the error in accepting the VE opinion regarding the jobs of teacher's aide and appointment clerk would be harmless if there are a significant number of jobs that Plaintiff would be able to perform based on the remaining job the VE found Plaintiff would be able to perform. There is no bright-line rule for what constitutes a significant number of jobs. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). If the court finds that there are a significant number of jobs that the claimant can perform at either the local or national level, it must affirm the ALJ's decision. Beltran, 700 F.3d at 390.

The VE testified that Plaintiff would be able to perform the job of counter clerk, which only requires a reasoning level of 2. (AR 84.) Additionally, the VE testified that there are 16,000 jobs statewide and 160,000 jobs nationally for the occupation of counter clerk. (AR 84.) In coming to these numbers the VE eroded the total number of jobs available by 60%. (AR 85.) Upon further examination of Plaintiff regarding her need for time off to attend medical

appointments, the VE opined that to compensate for the required time off he would again erode the numbers by half.  (AR 94.)  This would result in 8,000 jobs in California and 80,000 jobs nationally for the occupation of counter clerk.  Comparing these numbers with the number of jobs other courts have found to constitute a significant number of jobs, the Court finds that a significant number of jobs are available which Plaintiff would be able to perform.  See Albidrez v. Astrue, 504 F.Supp.2d 814, 824 (C.D. Cal. 2007) (1,445 regional and 17, 382 national jobs is significant number); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs regionally is significant number); Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1479 (9th Cir. 1989) (2,466 jobs in region is significant number); Cf. Beltran, 700 F.3d at 390 (finding 135 regional jobs and 1,680 nationally not a significant number); DiMartino v. Astrue, No. 2:09-cv-1097-JCC, 2010 WL 2196098, at *3 (W.D. Wash. May 27, 2010) (100 jobs regionally and 5,000 nationally is not significant number).[2]

      Plaintiff contends that the job of counter clerk requires reasoning beyond that which is within Plaintiff's limitation for simple repetitive tasks because it requires the individual to multi-task, make judgments and decisions on multi-factorial issues, and respond to potentially complex inquiries from customers and additionally does not fall within the low stress requirements for Plaintiff.  (ECF No. 13 at 12.)  The Court is not persuaded by this argument.  Similarly, other courts have found that individuals limited to simple, repetitive tasks are able to perform jobs which require level 2 reasoning.  Meissl v. Barnhart, 403 F.Supp.2d 981, 984 (C.D. Cal. 2005) ("the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling–Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans).  See DOT at 931, 936, 938.  Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed").

      The DOT describes the reasoning involved in this position to applying commonsense

---

[2] Since the job of counter clerk provides a significant number of jobs in the economy, the Court declines to address Plaintiff's argument that the jobs of teacher's aide and appointment clerk require greater use of the hands than allowed for by the residual functional capacity assessment.

understanding to carry out detailed but uninvolved written or oral instructions. The individual would deal with problems involving few concrete variables in or from standardized situations. Dictionary of Occupational Titles, No. 249.366-010; 1991 WL 672323 (G.P.O.). Further, this occupation requires a low degree of aptitude ability, for the most part in the lowest 1/3 excluding the bottom 10%. (Id.) The Court finds that the requirements of the job of counter clerk are not inconsistent with Plaintiff's residual functional capacity assessment as it applies to her mental disabilities. Since the DOT does not conflict with the VE's testimony any error that occurred in failing to ask the VE about any conflict was harmless.

Because any error that occurred was harmless, Plaintiff's appeal of the denial of Social Security benefits is denied.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining Plaintiff's residual functional capacity or in determining that Plaintiff was able to perform work which was available in the national economy. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Leticia Paz. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **November 27, 2013**                                    
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE